Julie ALEXANDER, Carmel G. Abbate, Bozeman Anderson, et al., Plaintiffs–Appellants,

v.

CITY OF CHICAGO, a municipal corporation, Defendant–Appellee.

Nos. 92–1441, 92–1442 and 92–1448.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1992.

Decided May 12, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 17, 1993.

Susan P. Malone, Perry M. Berke (argued), Burton I. Weinstein, John R. Malkinson, Baskin, Server, Berke & Weinstein, Chicago, IL, for plaintiffs-appellants.

Jennifer Naber, Asst. Corp. Counsel, Kathryn Zeledon Nelson, Kelly R. Welsh, Asst. Corp. Counsel, Benna R. Solomon, Joan Flynn, Asst. Corp. Counsel (argued), Office of Corp. Counsel, Appeals Div., Chicago, IL, for defendant-appellee.

Before BAUER, Chief Judge, CUDAHY, Circuit Judge, and CRABB, District Judge.*

CUDAHY, Circuit Judge.

A group of Chicago police officers alleged that the extent of the restrictions applied to their half-hour meal breaks required that they be compensated for such breaks under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219. The district court granted the City's motion for judgment on the pleadings in the first of three related cases and subsequently dismissed the companion cases. The officers appeal. We reverse.

I.

Under section 7(a) of the Fair Labor Standards Act (FLSA), employers must pay overtime to employees who work more than forty hours weekly. 29 U.S.C. § 207(a). An exception to that provision, embodied in section 7(k) of the FLSA, 29 U.S.C. § 207(k), allows public law enforcement and fire departments to declare work periods from seven to 28 consecutive days; under that scheme, employees working within a 28–day work period are entitled to overtime if they work more than 171 hours. The City of Chicago, which has elected to use the permitted exemption, allows its police officers overtime at time and a half of their pay for any hours over 171 in a 28–day period. The officers work shifts of 8.5 hours, which includes one uncompensated half-hour meal period.

Twenty current and former Chicago police officers initiated this action in state court in November 1989 alleging that the rules and restrictions applied to their half-hour meal periods necessitated that those periods be counted as compensable hours within the tour of duty pursuant to the FLSA. *Leahy v. City of Chicago,* 785 F.Supp. 724 (N.D.Ill. 1992).

Specifically, the plaintiffs' complaint puts forth an extensive list of requirements to which the officers must adhere during their meal breaks: officers must receive permission—frequently denied—to take a meal period, and cannot take that period during the last hour of a shift assignment; they must remain within their district; they must remain in full uniform while adhering to myriad regulations regarding conduct while in uniform; officers are not permitted to take meals at locations other than establishments

* The Honorable Barbara B. Crabb, Chief Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation.

serving food and those in two-person units must take meals together; officers must be available to terminate their meals upon request; no more than two officers may be present in the same establishment; officers must refrain from conduct that the department deems inappropriate for an officer, apparently including playing golf, reading nondepartmental publications, resting and napping; officers must refrain from drinking alcohol; they must respond to emergencies and requests for assistance by the public; and they must either spend the period where they can be reached by phone, or, if assigned to portable units, keep the units with them. Officers also are subject to report and review by inspectors during meal periods. In limited circumstances, officers can request prior permission to disregard some of the above-noted restrictions, such as that prohibiting more than two officers from eating at the same place.

The action was removed to federal court and about 5,600 other police officers joined the original plaintiffs in the first case, *Leahy v. City of Chicago*, 785 F.Supp. 724 (N.D.Ill. 1992). Others who missed the cutoff date for joining the action filed separate complaints in *Alexander v. City of Chicago* and *Accosta v. City of Chicago*. The complaints allege the same restrictions; amended complaints in the *Alexander* and *Accosta* actions also allege that requests by the public for assistance and information and interruptions by supervisors and inspectors occur regularly and frequently.

The City moved in the *Leahy* case for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The district court granted the City's motion for judgment on the pleadings and then granted the City's motions to dismiss the *Alexander* and *Accosta* complaints for failure to state a claim. This appeal consolidates the three separate cases.

## II.

■ We review *de novo* the district court's order granting the motion for judgment on the pleadings. There remains some confusion, however, regarding the nature of the district court's inquiry—that is, whether the case is governed by the standard for motions to dismiss or should instead be treated as a motion for summary judgment.[1] In *United States v. Wood*, 925 F.2d 1580 (7th Cir.1991), this court held, seemingly without qualification, that a 12(c) motion for judgment on the pleadings is subject to the same standard as a rule 12(b)(6) motion to dismiss. *Id.* at 1581. In that event, the district court, viewing all facts in a light most favorable to the non-moving party, may grant the motion only if "it is beyond doubt that the non-movant can plead no facts that would support his claim for relief." *Id.* (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989)); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The district court may not look beyond the pleadings, and all uncontested allegations to which the parties had an opportunity to respond are taken as true. *Wood*, 925 F.2d at 1581.

The defendant counters that judgment on the pleadings is, in the context of this case, more like summary judgment than like a motion to dismiss. Notwithstanding *Wood*,[2] there may be some validity to this argument. In *National Fidelity Life Insurance Co. v. Karaganis*, 811 F.2d 357 (7th Cir.1987), this court required a party moving for judgment on the pleadings to establish that there were no material issues of fact to be resolved and that it was entitled to judgment as a matter

---

1. The district court may have found rule 12(c)'s application perplexing as well; its original opinion had to be revised to indicate the correct motion it was granting. *Compare Leahy v. City of Chicago*, No. 89 C 9354, 1992 U.S. Dist. LEXIS 265 at *18 (N.D.Ill. Jan. 9, 1992) (granting "motion for summary judgment") *with Leahy v. City of Chicago*, 785 F.Supp. 724, 730 (N.D.Ill.1992) (granting "motion for judgment on the pleadings").

2. The City argues that the *Wood* court did not intend to work any change in the law governing rule 12(c) motions. *See* Defendant's Br. at 16 n. 4. Indeed, the case that the *Wood* court cites as authority for its statement regarding the use of the 12(b)(6) standard—*Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989)—clearly limited the application of the standard for motions to dismiss in rule 12(c) cases to situations in which the movant specifically asserted 12(b) defenses. *Id.; see also* discussion *infra*.

**336**

of law. *Id.* at 358; *see also* 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1368 at 530 (1990) (noting that courts will not grant a rule 12(c) motion if a material issue of fact exists); *id.* § 1369 at 535 (stating that the standard courts apply for summary judgment and for judgment on the pleadings "appears to be identical").

█ A defendant may use a rule 12(c) motion after the close of the pleadings to raise various rule 12(b) defenses regarding procedural defects, in which case courts apply the same standard applicable to the corresponding 12(b) motion. *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989); 5A Wright & Miller, § 1367 at 516 (noting that rule 12(c) can serve as an "auxiliary device" for asserting such defenses). Here, however, the City seems to use rule 12(c) in its customary application to attempt to dispose of the case on the basis of the underlying substantive merits. Defendant's Br. at 16, 20; *see also* 5A Wright & Miller, § 1367 at 509, 515 (stating that rule 12(c) is "primarily addressed to" this function). We therefore believe the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings. *Karaganis,* 811 F.2d at 358. Thus, we take all well-pleaded allegations in the plaintiffs' pleadings to be true, and we view the facts and inferences to be drawn from those allegations in the light most favorable to the plaintiffs. *Republic Steel Corp. v. Pennsylvania Eng'g Corp.,* 785 F.2d 174, 177 n. 2 (7th Cir.1986). We will *not* affirm the granting of the City's 12(c) motion unless no genuine issues of material fact remain to be resolved and unless the City is entitled to judgment as a matter of law. *Karaganis,* 811 F.2d at 358.

### III.

Although the FLSA does not define "work," its federal regulations set out the circumstances in which meal periods can be excluded from hours worked. Section 785.19(a) provides:

(a) Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals.... The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

19 C.F.R. § 785.19(a). For those agencies using the 7(k) exemption, section 553.223(b) provides that meal time may be excluded from hours worked on tours of duty of less than 24 hours

provided that the employee is completely relieved from duty during the meal period, and all the other tests in § 785.19 of this title are met. On the other hand, where law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities (e.g., "stakeouts"), they are not considered to be completely relieved from duty, and any such meal periods would be compensable.

29 C.F.R. § 553.223(b).

The district court, in ascertaining whether the officers' mealtimes here are compensable work time under the FLSA, looked only to the more specific regulation, section 553.-223(b), and the examples furnished there. Deciding that the Chicago officers' mealtimes "in no way resemble" section 553.223's examples involving stakeouts or confinement to barracks, the district court concluded that they are not compensable and that judgment on the pleadings was proper. *Leahy,* 785 F.Supp. at 730. This approach apparently derived from language in the Fifth Circuit case the district court relied on most heavily, *Lee v. Coahoma County,* 937 F.2d 220 (5th Cir.1991), which similarly noted that the meal breaks at issue "in no way resemble [the section 553.223] example." *Id.* at 225.

The district court's approach falters in two ways. First, the interplay between the federal regulations is more complex than the district court acknowledges. There is no reason to assume section 553.223(b) is separate and distinct from section 785.19(a); in

fact, section 553.223(b) incorporates "all the other tests in § 785.19." 29 C.F.R. § 553.-223(b). A recent Tenth Circuit case, *Lamon v. City of Shawnee*,[3] 972 F.2d 1145 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993), found some significance in the differences between the two regulations, but explicitly stated that its contrasting of the two sections did not mean that the "completely relieved of duty" standard is necessarily different for each section.[4] *Id.* at 1158 n. 18; *see also Kohlheim v. Glynn County*, 915 F.2d 1473, 1477 (11th Cir.1990). As a district court within the Tenth Circuit recently observed, *Lamon* "strongly implies that the 'completely relieved from duty' standard appearing in both § 553.223(b) and § 785.19 has the same meaning." *Brinkman v. Department of Corrections*, 804 F.Supp. 163, 171 (D.Kan.1992).[5]

■ The examination of compensability should not turn on a crabbed comparison between the mealtime restrictions and the necessarily arbitrary, and certainly not all-encompassing, examples in the regulations. The appropriate standard is instead the one articulated in *Lamon*—a standard that sensibly integrates developing case law with the regulations' language and purpose. Under

*Lamon*, a law enforcement employee is completely relieved from duty during a meal period "when the employee's time is not spent predominantly for the benefit of the employer," 972 F.2d at 1155, 1157; stated differently, the "FLSA requires remuneration for meal periods during which a police officer is unable comfortably and adequately to pass the mealtime because the officer's time or attention is devoted primarily to official responsibilities." *Id.* at 1155–56; *see also Armitage v. City of Emporia*, 982 F.2d 430 (10th Cir.1992) (adopting *Lamon* standard).

The second and more important problem with the decision below is that it does not acknowledge the basic posture of the cases it relies upon and, in particular, the great extent to which resolution of these cases depends upon the specific circumstances surrounding departmental policies regulating meal periods. No case that we are aware of involving law enforcement personnel treats compensability as a matter for judgment on the pleadings. Nearly all of the cases, involving facts generally comparable to those before us, have let the matter go to trial (either with a jury or to the court).[6]

3. *Lamon*, which involved restrictions quite similar to those alleged in the present case, was decided after the district court issued its opinion in this case. The district court did, however, dismiss as distinguishable the lower court decision in *Lamon* because, in part, "there existed a genuine issue of material fact as to whether the officers had been completely relieved of duty." *Leahy*, 785 F.Supp. at 729. The court did not explain how, on analogous facts, no such genuine fact issue exists in the case before us.

4. The dissent's characterization of *Lamon* as "relying on the Secretary's examples in section 553.-223(b)" is misleading. In articulating the predominant benefit test that derives from the FLSA's traditional application in other contexts, *see, e.g. Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 468, 89 L.Ed. 118 (1944), the *Lamon* court clearly did not envision section 553.223(b)'s examples as defining that standard. The *Lamon* court's refusal to decide the case as a matter of law on the same essential facts as we have here demonstrates that its understanding of the examples and ours are akin.

5. Elaborating, the *Brinkman* court noted that [t]he two distinctions observed between § 553.-223(b) and § 785.19 are insubstantial reasons

for reading identical words differently in almost indistinguishable contexts. No rationale for having a less rigorous meal period standard for an employee covered under § 207(k) is offered in *Lamon*. Section 207(k) obviously is intended to address the unique employment circumstances of a law enforcement officer, fire fighter, or corrections officer. Presumably, the same circumstances justify taking the same approach to meal period times for those similarly employed whether covered by § 207(k) or not.
804 F.Supp. at 171.

6. *See, e.g., Armitage v. City of Emporia*, 982 F.2d 430 (10th Cir.1992) (bench trial); *Lee v. Coahoma County*, 937 F.2d 220 (5th Cir.1991) (bench trial). One case resolves the issue prior to trial on cross motions for summary judgment—though with more extensive development of the facts than has been possible here. *Wahl v. City of Wichita*, 725 F.Supp. 1133 (D.Kan.1989). That court concluded that mealtimes are compensable in light of an array of restrictions similar to but arguably less constraining than those imposed on Chicago officers. *See* discussion *infra* pages 328–39.

In *Lamon*, for example, the Tenth Circuit reversed a jury verdict in favor of the plaintiffs on the basis of inadequate jury instructions.[7] The court gave no indication, however, that the evidence did not support the verdict or that a properly instructed jury that reached the same verdict at a new trial would not be upheld. Indeed, the *Lamon* court specifically stated that it did "not find that the evidence points but one way and is susceptible to no reasonable inference supporting the Plaintiffs' claim," adding that "there was sufficient evidence upon which a jury could properly have returned a verdict for the Plaintiffs on this issue." 972 F.2d at 1156. Accordingly, the court concluded that "the trial court did not err in submitting to the jury the issue of the compensability of meal periods." *Id.* at 1159.

The restrictions on the *Lamon* plaintiffs' meal periods essentially replicate those alleged in the present case. *See id.* at 1156. On their half-hour meal breaks, the City of Shawnee's police officers were required either to leave a telephone number where they could be reached or to monitor a portable radio. They had to react to emergency calls, answer to personnel shortages, respond to citizen requests, confront crimes committed in their presence and act in a responsible and professional manner. Meal locations were restricted to the city limits, or, with approval, locations close to the city, and the officers were not allowed to conduct personal business errands during their meal breaks. *Id.* These restrictions cannot fairly be character-ized as tighter than or substantively different from those alleged by the plaintiffs here. Thus, if the *Lamon* restrictions constituted sufficient evidence upon which a properly instructed jury could have returned a verdict for the plaintiffs, *id.,* judgment on the pleadings cannot be warranted on the facts before us.

In addition to *Lamon*, we also regard as instructive the District of Kansas's comprehensive analysis of the mealtime compensability issue in *Wahl v. City of Wichita,* 725 F.Supp. 1133 (D.Kan.1989).[8] The restrictions in the present case, while akin to those in *Lamon,* appear to be more inhibiting than those in *Wahl.* In *Wahl,* the officers were subject to geographical limitations, were required to answer emergency calls and to respond to crimes and citizen inquiries and were restricted both in what they could read and in the personal activities or errands they could perform. *Id.* at 1136–37. Unlike the plaintiffs in the case before us, however, the officers in the *Wahl* case were not required to remain in full uniform or hence to comply with all the associated regulations of uniformed conduct, although changing out of uniform was admittedly impractical on a short lunch period. *Id.* Moreover, more than two officers—but not more than "a few"—could visit the same restaurant at once. The *Wahl* case also does not indicate that the officers were prohibited from taking meals at locations other than establishments serving food, although they were prohibited

---

7. The *Lamon* court stated that the challenged instruction "countenanced the misapprehension that the performance of *any* official duty, no matter how insignificant, during meal periods rendered the time compensable." 972 F.2d at 1158.

8. Although the district court in the present case found *Wahl* to be among the two most authoritative cases, the court rejected *Wahl* because it was not a circuit court opinion and because it did not involve a section 7(k) employer. *Leahy,* 785 F.Supp. at 729–30 (finding *Wahl* "factually analogous"). Informed in part by our view that sections 553.223(b) and 785.19(a) generally address the same "completely relieved from duty" standard, *see supra* note 5 and accompanying text, we find that, in major part, the *Wahl* court's careful analysis of the compensability question is especially helpful to our task.

The case the district court ultimately relied on as most authoritative, on the other hand—a Fifth Circuit case that specifically applies section 553.-223(b)—confined its examination of the meal periods' compensability to one paragraph with virtually no analysis. *Lee v. Coahoma County,* 937 F.2d 220 (5th Cir.1991). In *Lee,* unlike the present case, the deputies were allowed to take their breaks wherever they pleased, though they would radio out once they reached their destination and were called back in an occasional emergency. *Id.* at 225. The *Lee* court, concluding that the fact findings supported the district court's fact conclusion that such meal periods are not compensable, noted merely that the meal breaks at issue were not like those in the section 553.223 examples. *Id.* at 225. We find that the authoritative value of *Lee* is impaired by its perfunctory analysis.

from taking meals in a tavern, private club or pool hall. *Id.* at 1136.

*Wahl* is unique among the reported cases on this narrow issue in that it arose prior to trial, on summary judgment. The case, however, follows a special pattern among summary judgment cases in that the parties filed cross motions for summary judgment and generated a complete record of uncontroverted facts by submitting affidavits, depositions and answers to interrogatories. Looking to section 785.19(a)'s standard as the appropriate statement of the law, the *Wahl* court concluded that the plaintiffs clearly were not completely relieved of their duties. *Id.* at 1139. The court stated that "[w]hat matters in meal period cases is whether the employee is subject to real limitations on his personal freedom which inure to the benefit of his employer." *Id.* at 1144. Moreover,

> [t]he rules of the city, both written and unwritten, and the practical constraints arising from the limited length of the break, combine to ensure the city of a reserve of uniformed officers, immediately available for emergency service. The restrictions on the plaintiffs are designed to maximize the public appearance of the officers' readiness. The city receives the advantages of improved public relations and the elimination of the need to hire additional officers. But as these benefits accrue to the city, the officers are faced with corresponding limitations on their personal freedom.

*Id.; cf. Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944) (stating that "[r]eadiness to serve may be hired, quite as much as service itself").

In the case before us, a judge or a jury as factfinder might ultimately find for the defendant. That, however, differs vastly from ruling for the defendant on the pleadings.[9] It is not possible in the case before us or in comparable circumstances in the other reported cases to resolve factual issues and apply the appropriate standard to those facts at this early stage as a matter of law. This is not to say that resolution of the FLSA mealtime compensability issue in the countless factual configurations that might arise will always require a trial. What *is* required is sufficient development of the facts to enable a capable application of the appropriate predominant benefit standard, including a determination of whether the officers are unable to pass the mealtime comfortably because their time or attention is devoted primarily to official responsibilities.[10] *See Lamon,* 972 F.2d at 1155–56.

Moreover, although the extent to which police officers receive regular compensation whenever they actually are disturbed by official duties is not a fact of record here, we could not infer from the existence of such a policy that officers who are not affirmatively called back to duty are necessarily completely relieved of duty.[11] There is a universe of possibilities about when a meal is "interrupted" so as to require compensation. At this point we can only speculate about the fre-

---

9. The dissent, by asserting that the plaintiffs are not entitled to "automatic compensation" for their meal periods, *post* at 342, seems to suggest that the plaintiffs claim entitlement to win here and now. The issue at this stage, however, is whether additional factual development is essential to a proper decision.

10. The dissent gives great weight to the court's ruling against the plaintiffs as a matter of law in *Armitage v. City of Emporia,* 982 F.2d 430 (10th Cir.1992), where the detectives could not conduct personal errands during lunch and were required to respond to citizen inquiries and act professionally. But of course the *Armitage* court had the benefit of a complete trial record. The *Lamon* predominant benefit test—while conceivably applicable purely as a matter of law in some instances—necessarily involves some informed appraisal of how the particular mealtime limita-

tions actually affected the officers' mealtimes. Looking only to the pleadings in the present case, a court cannot competently rule as a matter of law that officers spent or did not spend their mealtime predominantly for the benefit of the employer or that their time or attention was or was not devoted primarily to official responsibilities.

11. On a related issue, we are not persuaded by the defendants' argument that the collective bargaining agreement between the City and its police officers obviates the officers' claim by confirming those parties' understanding that meal periods are not working time within the FLSA. Although a factfinder might consider such an agreement as one among many factors in determining whether the officers were completely relieved of duty, it certainly does not outright preclude the officers' claim.

quency of communication to police officers at mealtime, the frequency and extent of interruptions, the effect of the various restrictions on an otherwise uninterrupted meal period and a variety of other factual matters. The pleadings alone simply do not reveal to what extent the officers' attention was turned to official duties.

■ Finally, although only the *Alexander* and *Accosta* amended complaints—but not the *Leahy* complaint—specifically allege, in addition to the basic restrictions, that supervisors' interruptions and requests by the public for assistance and information occur on a regular and frequent basis, we note that the absence of this exact language in the *Leahy* complaint does not alter our analysis with respect to those particular plaintiffs. The complaint's comprehensive catalog of restrictions makes clear without any supplementary magic words that further development of the particular factual circumstances is needed before a court or jury can judge whether the officers' mealtimes are spent predominantly for the department's benefit and whether officers are unable to comfortably and adequately pass the mealtime because their time or attention is devoted primarily to official responsibilities. *See Lamon*, 972 F.2d at 1155–57. Federal notice pleading requires no more. *See* Fed.R.Civ.P. 8(a). When all reasonable inferences are drawn in favor of the officers, the allegations in each of the three complaints are sufficient to raise a viable claim, the merits of which cannot be resolved as a matter of law on these limited facts.[12]

### IV.

This case is appropriately resolved by allowing the trier of fact to judge, after sufficient development of the factual circumstances, whether the officers were completely relieved of duty under the standard articulated in the recent *Lamon* case. For the foregoing reasons, we REVERSE the district court's entry of judgment on the pleadings and REMAND for further proceedings consistent with this opinion.

CRABB, District Judge, concurring.

This is an extraordinarily difficult case, made more so by the lack of a factual record. I agree with Judge Cudahy that a more complete development of the facts is necessary to allow an informed decision on the scope of the officers' duties during their lunch breaks. In this regard, I want to add a few comments on the Rule 12(c) motion, the procedural vehicle used by defendant. As this case illustrates, the motion is often confusing. Because it can be used to raise procedural defects after an answer has been filed, it resembles the motions brought under 12(b), including the motion to dismiss for failure to state a claim. It can also be used in situations in which the pleadings are complete and without defect and raise only a question of law. *See generally,* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* §§ 1367 and 1368 (1990). In this case, it appears that defendant used it in the *Leahy* case to try to resolve a question of law and that plaintiffs objected to its use, maintaining that factual development of the record was necessary to resolve the case and that their complaint was sufficient to state a claim. (In *Accosta* and *Alexander,* defendant filed 12(b)(6) motions, which were granted by the district court, relying on the disposition of *Leahy.*)

On appeal, plaintiffs argue that the district court should have applied a motion to dismiss standard to defendant's 12(c) motion in *Leahy,* that is, the district court should have considered whether any set of facts might be alleged that would support their claim. Plaintiffs seem to be arguing that the district court should not be bound by the defendant's characterization of its motion: whenever the motion is filed in a situation in which there is some question whether the complaint is sufficient on its face to state a claim, the court should apply the motion to dismiss standard.

At the outset of his opinion, Judge Cudahy declines to adopt a motion to dismiss standard when the moving party is seeking judg-

---

**12.** The City itself does not argue that the omissions in the *Leahy* complaint distinguish it from the other two complaints. In fact, it contends that the frequency of interruptions is irrelevant. Def.Br. at 19–20.

ment as a matter of law, but he seems to revert to it at the end. At p. 340, *supra,* he notes the possibility that the plaintiffs in *Leahy* might be able to show that frequent interruptions turn their lunch breaks into work time, even though these plaintiffs never made allegations to that effect in either their original or their amended complaint. If, when district courts are considering motions for judgment on the pleadings, they have an obligation to consider whether the plaintiffs could come forward with additional facts that would state a claim, I think this should be made plain in the opinion. I would hold that whenever a defendant moves for judgment on the pleadings in any but the rare case in which the parties agree that the pleadings set out a straightforward question of law, the court should apply the motion to dismiss standard in evaluating the legal sufficiency of the pleadings.

Turning to the merits of the case, I note that much of the difficulty of this case lies in applying the "completely relieved from" standard to patrol work, which consists largely of surveillance conducted in a heightened state of readiness. The frequency of interruptions during meal periods may operate to impose a state of readiness so like that of actual patrol work as to warrant compensation during *all* meal periods. Such a state of readiness may result from the frequency of dispatcher-initiated calls, or again, departmental regulations may so constrain an officer's choice of location and activities during meal periods as to require in effect that the officer perform services commensurate with those of an officer who walks a beat. In either case, officers would not be "completely relieved from duty" within the meaning of the FLSA.

I understand Judge Cudahy to be holding that these cases should be returned to the district court to allow the plaintiffs a chance to show that the number and frequency of the actual interruptions require them to spend their lunch breaks predominantly on their employer's business. To the extent that his opinion can be read to hold that the officers have raised a triable issue of fact merely by proffering the actual departmental regulations, I disagree with it. The regulations do not affirmatively require the perfor-

mance of active duties or so restrict the officer's choice of location and activities as to make his lunch break the equivalent of work time. It is the allegation of frequent interruptions that raises the possibility that the officers could show that their "attention is devoted primarily to official responsibilities" during meal periods. In the absence of such an allegation, one can presume that departmental restrictions are intended merely to facilitate readiness to respond to events of limited contingency, such as an emergency call, or are otherwise incidental to an officer's on-call uniformed status. This presumption would be strengthened by a showing that a department has adopted procedures to defer calls by the dispatcher to an officer until after the officer's meal break and to otherwise insulate officers from recurrent disruptions. Conversely, this presumption would be eroded by a showing of frequent interruptions, particularly those initiated by the department, that suggest that restrictions are designed to convert meal periods into patrol time. *Lee,* 937 F.2d at 225, was decided in favor of the employer in part because evidence existed that officers were called back only in an occasional emergency. Similarly, in *Lamon,* although the department had revised its administrative code to provide that lunch periods be uninterrupted except in emergencies, officers had alleged that evening meals were frequently interrupted, that officers were frequently required to respond to emergencies, and that often officers had to forgo meals entirely. 1990 WL 186280, at *2 and *5, 1990 U.S. Dist. LEXIS 15906, at *5 and *16 (D.Kan. Oct. 4, 1990).

Standing alone, the restrictions alleged in *Leahy* are insufficient to raise a viable claim that these plaintiffs-appellants were not completely relieved from duty. However, I agree with Judge Cudahy that plaintiffs might be able to allege facts that would sustain their position and entitle them to relief. Applying a motion to dismiss standard to their complaint, I would give them a chance to add such allegations to their complaint and develop a factual record. In *Alexander* and *Accosta,* plaintiffs-appellants allege frequent interruptions by citizens and inspectors, although they do not allege that they are required frequently to respond to

"emergency calls" or other calls by the dispatcher or to undertake other duties. Although the allegations suggest that officers remain free to undertake personal errands while on their lunch breaks, unlike the officers in *Wahl,* 725 F.Supp. 1133, 1137 (D.Kan. 1989) and *Lamon,* when all reasonable inferences are drawn in favor of the officers, the allegations support an inference that the officers' meal periods are primarily for the benefit of the employer.

BAUER, Chief Judge, dissenting.

The Fair Labor Standards Act ("FLSA") requires that police officers be primarily engaged in work-related duties during meal periods to warrant compensation for those meal periods. *Armitage v. City of Emporia, Kansas,* 982 F.2d 430, 432 (10th Cir.1992). The Chicago police officers ("the Officers") claim that FLSA requires the City of Chicago ("the City") to pay them as a matter of course when the Officers do nothing more than eat during their meal periods.[1]

The majority sets out the facts alleged in the Officers' complaints. The majority does not mention, however, that the City pays the Officers overtime in accordance with the collective bargaining agreement between the Officers and the City. The agreement requires the City to pay a police officer if the officer works during a meal period. The Officers make no allegation that the City does not comply with the terms of the collective bargaining agreement. The issue in this case, then, is whether FLSA requires the City to pay the Officers during their meal period even if they do nothing other than eat during this time and adhere to the restrictions listed in the Officers' complaints. I disagree with both the majority's analysis of the regulations promulgated by the Secretary of Labor ("the Secretary") and with the majority's interpretation of decisions by other courts in similar cases. I will address each in turn.

The majority properly points out that two regulations guide our decision in this case. Both of these regulations interpret FLSA to mean that meal periods are not compensable when employees—here, the Officers—are "completely relieved from duty." 29 C.F.R. §§ 553.223(b), 785.19(a). The majority points out, and I agree, that the two regulations are not separate and distinct. I part company with the majority because I believe that the regulations indicate that the Officers do not allege facts that entitle them to automatic compensation for their meal periods.

Section 785.19(a), the broader of the two regulations, illustrates by example that "an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating" and therefore must be compensated under FLSA. 29 C.F.R. § 785.19(a). Similarly, section 553.223(b), which applies specifically to cases, like this one, involving law enforcement personnel, states that "[w]here law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities (e.g., 'stakeouts'), they are not considered to be completely relieved from duty, and any such meal periods would be compensable." 29 C.F.R. § 553.223(b).

Taking the two regulations together, as the majority does, does not change the analysis. Both of these regulations indicate that when employees covered by FLSA, including police officers, are required to be at a particular place—at a desk, machine, barracks, or location involving extended surveillance—the employee is working and must be paid. The implication of the Secretary's examples is that when employees are not so rigidly restricted to a particular place, like the Officers here, they are not entitled to compensation under FLSA.

With no explanation and without any support from precedent, the majority announces that the examples in the regulations are "arbitrary, and certainly not all-encompassing."

1. The Officers apparently envision the following scenario as a possibility. Two Chicago police officers park their squad car and walk into a local restaurant. They sit down, order a meal, and then spend 30 undisturbed minutes eating. Afterwards, the two officers return to their squad cars and continue their patrol duties. The Officers argue that FLSA requires the City to pay these two officers—at no less than overtime rates—for this "work." I dissent because I do not agree that such a meal period is compensable under FLSA.

While I agree that the examples are not all-encompassing, I do not agree that they are arbitrary. Rather, the examples in sections 785.19(a) and 553.223(b) represent the Secretary's reasoned judgment in interpreting FLSA. The majority errs by describing the examples contained in the regulations as arbitrary. Even if FLSA is considered ambiguous, we still must defer to the Secretary's interpretation of FLSA so long as it is based on a permissible construction of that statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Martin v. The Refrigeration Sch., Inc.,* 968 F.2d 3, 5 (9th Cir.1992). The majority apparently does not believe the Secretary's examples warrant even a cursory discussion. Instead, they are dismissed as "arbitrary and not all-encompassing." I believe that the Secretary's examples are based on a permissible construction of FLSA. *See Lamon v. City of Shawnee,* 972 F.2d 1145, 1157 (10th Cir.1992) (relying on the Secretary's examples in section 553.223(b)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993); *Lee v. Coahoma County,* 937 F.2d 220, 225 (5th Cir.1991) (same). Sections 785.19(a) and 553.223(b)—and the examples contained therein—demonstrate that the Officers do not allege facts sufficient to show that they are so confined to a particular place during their meal periods that they should be compensated.

I similarly disagree with the majority's use of precedent. In *Lee,* for example, several deputy county sheriffs sued the defendant county for alleged violations of FLSA. On appeal, the deputies challenged the district court's finding that their meal breaks were not compensable. *Id.* at 225. The deputies claimed that FLSA required the county to pay them for their meal periods because the periods were often less than thirty minutes and the deputies could be called back to duty if an emergency arose. *Id.* The Fifth Circuit looked to the examples contained in section 553.223(b) and concluded that "[t]he meal breaks of the . . . deputies in no way resemble [these] example[s]." 937 F.2d at

225. The court added that it was "not dispositive that the deputies could be called if an emergency arose and this contingency does not mean that they remained on duty." *Id.* The court also found it insignificant that the meal periods were often less than 30 minutes. *Id.* For these reasons, the court rejected the deputies' claims and affirmed the district court's decision that the deputies' meal periods were not compensable. *Id.* at 228.

In *Lamon v. City of Shawnee,* 972 F.2d 1145 (10th Cir.1992), relied on by the majority, the Tenth Circuit reached a similar result in an analogous case. There, police officers sued the City of Shawnee, Kansas for alleged FLSA violations because the city did not pay them for their 30-minute meal periods. *Id.* at 1147. The court noted that the officers were relieved from duty during meal periods but, like the Officers here, had to respond to emergency calls, citizen requests, and crimes committed in their presence. *Id.* at 1149. Also like the Officers in this case, the officers in *Lamon* were required to leave a telephone number where they could be reached or to monitor a portable radio during their meal periods. *Id.*

In *Lamon,* the Tenth Circuit had to define the Secretary's "completely relieved from duty" standard in order to decide whether FLSA required the city to compensate the officers for their meal periods.[2] The court stated that in the context of FLSA section 7(k), 29 U.S.C. § 207(k)—the same statute at issue here—"a law enforcement employee is considered to be completely relieved from duty during a meal period when the employee's time is not spent predominantly for the benefit of the employer." *Id.* at 1155. The court added that "FLSA requires remuneration for meal periods during which a police officer is unable comfortably and adequately to pass the mealtime because the officer's time or attention is devoted primarily to official responsibilities." *Id.* at 1155–56.

As in *Lee,* the *Lamon* court relied on section 553.223(b) instead of the more gener-

---

**2.** As the majority points out, the "completely relieved from duty" standard is contained in both sections 785.19(a) and 553.223(b).

al section 785.19(a). *Id.* at 1156–57. The court noted that section 553.223(b) illustrated circumstances "involving law enforcement personnel that would run afoul, if not compensated, of the 'completely relieved from duty' standard" and pointed to the regulation's examples of "personnel required to remain on call in a barracks or similar quarters or assigned to extended surveillance duties, such as stakeouts." *Id.* at 1157 (citing *Lee*, 937 F.2d at 225). The court found those examples different from the restrictions placed on the officers in *Lamon* and found the differences "instructive."[3] *Id.* at 1157. The court therefore concluded that "a police officer must primarily be engaged in work-related duties during meal periods to warrant compensation therefor. That a police officer is on-call and has some limited responsibilities during meal periods does not perforce mean the officer is working." *Id.* at 1157. The court held that the district court had erred by ignoring section 553.223(b) and instructing the jury with language that tracked only section 785.19. *Id.* at 1156, 1158. The Tenth Circuit therefore reversed the district court's judgment in favor of the plaintiffs on the meal period issue and remanded the case for a new trial. *Id.* at 1159.

The Tenth Circuit applied *Lamon* to a suit brought by police detectives against the City of Emporia, Kansas. *Armitage v. City of Emporia, Kansas*, 982 F.2d 430 (1992). In *Armitage*, the police detectives were required to take an unpaid lunch break of at least 30 minutes. *Id.* at 431. The police detectives had to notify the dispatcher of their location in case they were needed, were not allowed to consume alcohol during lunch, and were required to respond to questions from the public if approached during lunch. *Id.* Also, like the Officers here, the police

detectives in *Armitage* were paid at the overtime rate if they were called back to duty during lunch. *Id.* The police detectives sued the city pursuant to FLSA. After a bench trial, the district court awarded back pay for the police detectives' lunch periods. *Id.* The Tenth Circuit reversed because *Lamon* "require[d] a different outcome under these facts." *Id.* As articulated in *Lamon*, the court in *Armitage* stated that "the proper standard for determining compensability of a meal period is whether the officer is 'primarily . . . engaged in work-related duties during meal periods.'" *Id.* at 432 (quoting *Lamon*, 972 F.2d at 1157). The *Armitage* court determined that the facts, as found by the district court, indicated that the police detectives were not primarily engaged in work-related duties during their meal periods. 982 F.2d at 432. Accordingly, the court reversed the award of backpay for meal periods. *Id.* The court did not remand the case for a new trial, as in *Lamon*, but instead substituted its judgment for the district court's and instructed the district court to enter judgment for the city. *Id.* at 433.

The majority in this case accurately observes that *Lee*, *Lamon*, and *Armitage* all involved trials whereas here, the district court dismissed the Officers' complaints. The gist of *Lee*, *Lamon*, and *Armitage*, however, demonstrates that dismissal was proper. In all three cases, the courts ruled against the deputy sheriffs, police officers, and police detectives. In *Lee*, the court affirmed the district court's decision that the meal periods were not compensable. In *Lamon*, the court reversed a district court's decision that meal periods were compensable. Finally, *Armitage*—the most recent pronouncement on the issue—is perhaps the most instructive because the court in that

---

**3.** In full, the *Lamon* court stated:

[Section] 553.223(b) goes on to illustrate circumstances involving law enforcement personnel that would run afoul, if not compensated, of the 'completely relieved from duty' standard, citing the examples of personnel required to remain on call in barracks or similar quarters or assigned to extended surveillance duties, such as stakeouts. We find these differences instructive in determining the reach of

the completely relieved from duty standard pursuant to § 553.223(b).

*Lamon*, 972 F.2d at 1157. The majority describes my characterization of *Lamon*'s reliance on the Secretary's examples in section 553.-223(b) as "misleading." As the above excerpt from *Lamon* indicates, however, there is nothing misleading about my characterization of that case. The Tenth Circuit in *Lamon* clearly relied on the Secretary's examples in section 553.-223(b).

case had the obvious advantage of interpreting and applying both *Lee* and *Lamon.* In *Armitage,* the court simply looked at the facts, decided the case against the plaintiff police detectives as a matter of law, and ordered the district court to enter judgment for the defendant city. The *Armitage* court's conclusion that FLSA did not require the defendant city to compensate the police detectives for their meal periods is one that we should follow here. Numerous other courts have similarly interpreted FLSA. *See, e.g., Brinkman v. Department of Corrections,* 804 F.Supp. 163, 172 (D.Kan.1992) (merely because corrections officers may be on-call and retain some other duties over their lunch period does not of necessity require compensation); *City of Univ. Park v. University Park Police Ass'n,* 766 S.W.2d 531 (Tex.Ct. App.1989) (police officers' mealtime not compensable when mealtime break not spent predominantly for the benefit of defendant city); *Weeks v. Chief of Wash. State Patrol,* 96 Wash.2d 893, 639 P.2d 732 (1982) (state troopers not entitled to overtime compensation for lunch hour when lunch hour was included in their salaries and when troopers were paid at time and a half rate if called out during lunch hour).[4]

The trend is clear. FLSA does not require municipalities to pay police officers unless the officers work during their meal period—that is, unless the officers are primarily engaged in work-related duties. The facts alleged in the complaints are no different than the facts found after trial in *Lee, Lamon,* and *Armitage.* In fact, this is an even stronger case for the City than for the municipalities in those cases. Here, the City is bound by the collective bargaining agreement which requires that the Officers receive overtime rates when they work during their meal periods. The Officers do not allege that the City has breached the collective bargaining agreement and, absent such an allegation, I assume the City fully complies with its terms. Consequently, the City pays the Officers if they work during their meal periods and does not pay them if they do not work during their meal periods. FLSA requires no more.

There is no need for further factual development of the Officers' case when the facts alleged—taken together with the collective bargaining agreement—so clearly indicate that the City has not violated FLSA. I do not believe that the district court's already full docket should be cluttered with this case when the Officers' complaints are doomed. Finally, I do not believe that federal courts should micro-manage municipal police departments when, as in this case, a collective bargaining agreement provides for a compensation plan that fully comports with FLSA's requirements and the police officers do not allege that the municipality has violated such an agreement. I would affirm the district court's dismissal of the Officers' complaints.

---

4. I also disagree with the majority's interpretation of *Wahl v. City of Wichita,* 725 F.Supp. 1133 (D.Kan.1989). I do not agree with the majority's assertion that the restrictions the City places on the Officers in this case are more restrictive than those in *Wahl.* In fact, I believe the opposite is true. The *Wahl* court found the following restrictions, none of which are alleged in this case: officers were prohibited from eating lunch with their wives; officers had limited reading privileges during their meal period; some officers were prohibited from going through bank drive-throughs or using automatic teller machines; other officers were not allowed to watch television or play pinball or video games. *Id.* The court therefore held that "[b]ecause the plaintiffs are subject to substantial limitations and duties during their meal periods, they are entitled to compensation for those periods under the FLSA." *Id.*

As an initial matter, *Wahl* is factually distinguishable from the instant case because the restrictions in *Wahl* are more extensive than those alleged here. Also, in *Armitage,* the Tenth Circuit observed that the district court in that case (*Armitage* ) partially relied on *Wahl* to award the plaintiff police detectives compensation for their meal periods. *Armitage,* 982 F.2d at 431. The Tenth Circuit rejected that result, noted that *Lamon* set forth the correct standard, applied that standard, and ordered the district court to enter judgment for the defendant city. *Id.* at 431–33.