Sandra BAREFIELD, Eddie Benoit, Dave W. Bennett, et al., Plaintiffs–Appellants,

v.

VILLAGE OF WINNETKA, an Illinois municipal corporation, Defendant–Appellee.

No. 95–3301.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 8, 1996.

Decided April 15, 1996.

Rehearing Denied May 28, 1996.

706

Charles A. Cohn (argued), Erwin Cohn, Cohn & Cohn, Chicago, IL, for Plaintiffs-Appellants.

Thomas J. Piskorski (argued), William A. Cirignani, Robert T. Clark, Jr., Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant-Appellee.

Before ESCHBACH, FLAUM, and MANION, Circuit Judges.

ESCHBACH, Circuit Judge.

Plaintiffs, 35 former and current police officers and civilian dispatchers/communications officers employed by defendant Village of Winnetka ("Winnetka"), filed a complaint for a declaratory judgment and an accounting. Plaintiffs seek to recover overtime pay allegedly owed them under the terms of an employee manual and under the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"). Plaintiffs appeal from the district court's entry of summary judgment in favor of Winnetka. We affirm.

I.

Prior to 1992, Winnetka's police officers and certain civilian employees of the Winnetka Police Department attended "roll call" before beginning their shift each day. A work day consisted of one of three eight-hour shifts. Roll call was a formal police activity that constituted the period of 15 minutes prior to the start of each shift. Roll call included uniform and equipment inspections, review of current orders and memoranda, review of pertinent activity on prior watches, and the assignments of vehicles and beats. In addition, police officers were sometimes assigned to handle a call on the street during roll call.

Plaintiffs seek compensation for the time spent at roll call during the period of January 1, 1983, through February 16, 1992.

During that period, plaintiffs were scheduled on a 28–day work period that specified each plaintiff's days on, days off, and vacation days. Winnetka's Police Department Policy and Procedure Manual (the "Manual") required plaintiffs to be present for roll call, but did not require compensation for this specific time. In fact, Winnetka had required attendance at roll call for over thirty years, but time spent in roll call had never been paid time. Furthermore, no plaintiff had ever submitted a pay request for time spent in roll call. Plaintiffs knew when they joined the Police Department, and while they remained members of the police department, that Winnetka would not pay them for time spent in roll call.

Plaintiffs' eight-hour shift included two paid 15–minute breaks and a paid 30–minute meal period. During the breaks and the meal period, plaintiff police officers would often run personal errands. They also could eat wherever they wanted (including at home), read, or make personal telephone calls. Plaintiff civilian officers' only restriction during their meal period was that they had to remain in the police department building or in radio contact with the building. All plaintiffs remained "on-call" during these times. Being on call required plaintiff police officers to remain in radio or telephone contact, remain in or near the physical proximity of the Village of Winnetka, use an official patrol car to travel, and remain in uniform. Because all plaintiffs were on call, they occasionally would be called away from their break or their meal for department business. On such occasions, they were generally permitted to make up the lost time off.

Basing their claim on the terms of the Manual, plaintiffs brought an action seeking compensation for time spent in roll call. Winnetka issued copies of the Manual to all plaintiffs at the commencement of their employment and required plaintiffs to keep a copy of the Manual and be familiar with its contents. The Manual, by its own terms, establishes the rights and responsibilities of employees of the department. Each part of the Manual is called a "General Order." The

various orders dealing with "Premium Pay Policy" define "Regular Overtime," stating:

> Regular Overtime is *authorized* work beyond the regular eight hour tour of duty. Such work may be compensated at the request of each individual Officer on either a time and one-half basis, or through the use of compensatory time, also on a time and one-half basis. [emphasis in original]

Plaintiffs contend that the Manual requires that Winnetka compensate them for attendance at roll call because roll call is "authorized work" and it is "work beyond the regular eight hour tour of duty."

Winnetka has a different view of these circumstances. In Winnetka's view, the past practice of not compensating for roll call time is evidence that all parties understood and agreed that roll call was not paid time. Furthermore, the Manual does not indicate that time spent in roll call is paid time, overtime or otherwise. The premium pay policy in the Manual states:

> Department policies conform within general guidelines outlined by the Village relating to overtime work. As a general principle, guidelines state that "... thirty (30) minutes or more beyond regular working hours in a day is considered overtime work and ... will be compensated at the rate of one and one-half times the number of hours worked". This policy also allows for payment of overtime work through the use of compensatory time off in lieu of payment for overtime.

Winnetka believes that the terms of the Manual preclude compensation for overtime if that overtime is less than 30 minutes beyond regular working hours in a day. Roll call is only 15 minutes beyond regular working hours in a day. Winnetka also emphasizes the overall compensation scheme in effect at the Police Department, including the paid meal period and the paid 15–minute breaks.

Plaintiffs originally filed this action in the Circuit Court of Cook County, Illinois. Their complaint contained three counts. Count I alleged a violation of various General Orders contained in the Manual. Count II alleged a violation of the FLSA. Count III sought an accounting for any violations under Counts I and II. Winnetka removed the case to the U.S. District Court for the Northern District of Illinois. The district court had federal question jurisdiction over count II based on the FLSA claim and supplemental jurisdiction over counts I and III pursuant to 28 U.S.C. § 1367(a).

The parties filed cross motions for summary judgment, and the district court entered summary judgment in favor of Winnetka and against Plaintiffs on all counts. The court found that the contract claim failed because nothing in the Manual promised roll call pay and because meal and break periods were paid periods. In addition, Winnetka told its employees at the beginning of their employment that they would not be compensated for time spent at roll call. The court rejected plaintiffs' argument that the Illinois decision in *Duldulao v. Saint Mary of Nazareth Hospital Center,* 115 Ill.2d 482, 106 Ill. Dec. 8, 12, 505 N.E.2d 314, 318 (1987), required the court to find that a contractual right to compensation existed. The district court also rejected the FLSA claim, reasoning that the plaintiffs worked on a 28–day period and that the plaintiffs were compensated for eight hours of work each day, especially given that plaintiffs received two paid 15–minute breaks and one paid 30–minute meal period. Plaintiffs appeal from the district court's grant of summary judgment for Winnetka and denial of summary judgment for plaintiffs. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

■ Plaintiffs' appeal can be resolved based on the determination of two issues: (1) whether plaintiffs had a contractual right to compensation for time spent at roll call; and (2) whether the lack of compensation for time spent at roll call violates the Fair Labor Standards Act. We review *de novo* the district court's rulings on the cross motions for summary judgment, resolving all reasonable inferences in favor of the non-moving party. *Kennedy v. United States,* 965 F.2d 413, 417 (7th Cir.1992).

### A.

In order to prevail on the first issue, plaintiffs must establish that the Manual created an enforceable contract and that this contract mandated a right to payment for time spent in roll call. The Illinois Supreme Court's decision in *Duldulao v. St. Mary of Nazareth Hospital*, 115 Ill.2d 482, 106 Ill. Dec. 8, 505 N.E.2d 314 (1987), established the test for determining whether an employee policy document such as the Manual is a contract enforceable against the employer. This test mirrors the traditional tests for contract formation:

> First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.

*Id.* at 318, 106 Ill.Dec. at 12. Whether a contract exists is a question of law. *St. Peters v. Shell Oil Co.*, 77 F.3d 184 (7th Cir. 1996).

The test established in *Duldulao* determines whether an implied-in-fact contract exists. *Lampe v. Swan Corp.*, 212 Ill. App.3d 414, 156 Ill.Dec. 658, 659, 571 N.E.2d 245, 246 (Ill.App.1991). An implied-in-fact contract requires a meeting of the minds.

> An implied contract arises where the intention of the parties is not expressed, but an agreement in fact creating an obligation is implied or presumed from their acts; in other words, where circumstances under common understanding show a mutual intent to contract. A contract implied in fact must contain all elements of an express contract, and there must be a meeting of the minds.

*Foiles v. North Greene Unit Dist. No. 3*, 261 Ill.App.3d 186, 198 Ill.Dec. 562, 563, 633 N.E.2d 24, 25 (Ill.App.1994). Plaintiffs cannot prevail on this claim because, even if we assume that the Manual created an enforceable contract, any such contract was formed on the premise that roll call would not be a paid activity. There was no meeting of the minds that would establish a contractual right to compensation for attendance at roll call. We will not find an implied contract on terms that *neither* party understood to exist.

Finally, the terms of the Manual resolve the issue in Winnetka's favor. The terms of the Manual state: "Regular overtime is *authorized* work beyond the regular eight hour tour of duty." The Manual also states, however, that "... thirty (30) minutes or more beyond regular working hours in a day is considered overtime work ...." The Manual provides that roll call does not qualify as compensable overtime because roll call is less than thirty minutes.

### B.

We consider separately the claims of plaintiff police officers and plaintiff civilian officers under the FLSA. Section 7(a) of the FLSA requires employers to pay overtime to employees who work more than 40 hours per week. 29 U.S.C. § 207(a); *Alexander v. City of Chicago*, 994 F.2d 333, 334 (7th Cir.1993). Section 7(k), however, contains a partial exemption from the overtime provisions of § 7(a). Section 7(k) permits public agencies to establish a "work period" that lasts from seven to 28 days for employees engaged in law enforcement or fire protection activities. In such a circumstance, employees who work more than 171 hours in a 28-day work period are entitled to overtime pay. 29 U.S.C. § 207(k). Essentially, an employer with a schedule that qualifies for a 7(k) exemption must pay overtime for work done beyond 43 hours in a seven-day work period. 29 C.F.R. § 553.230; *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 805 (11th Cir.1992). Winnetka urges that it qualifies for a 7(k) exemption based upon the sworn police officers' schedule and argues that plaintiff police officers' attendance at roll call would elevate their number of hours from 40 per week to 41 and ¼ per week, still short of the 43 allowed under the 7(k) exemption.

We agree with Winnetka that it qualifies for a 7(k) exemption. Plaintiff po-

lice officers worked on a 28–day schedule. We recognize that Winnetka bears the burden of establishing that it qualifies for a 7(k) exemption, *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974), and we normally consider this an issue appropriate for the finder of fact. *Alexander*, 994 F.2d at 337. Summary judgment is nevertheless appropriate because the facts are uncontradicted and plaintiffs concede that the 28–day schedule meets the factual criteria to bring the Winnetka Police Department under the 7(k) exemption. *See Avery v. City of Talladega*, 24 F.3d 1337, 1343–44 (11th Cir.1994); *Birdwell*, 970 F.2d at 806 & n. 2.

■■■ While plaintiff police officers admit that they work on a 28–day schedule, they argue that Winnetka can not qualify for a 7(k) exemption because the Winnetka Police Department's 28–day schedule predates the enactment of § 7(k) of the FLSA and Winnetka "made no declaration of intent to come under Section 7(k) . . . ." We note first that nothing in the language of the statute, 29 U.S.C. § 207(k), requires Winnetka to express a "declaration of intent" to qualify for the exemption. We hold that it is enough that Winnetka's police department met all of the factual criteria for § 7(k). Second, we hold that Winnetka need not have had the 7(k) exemption in mind when it adopted a 28–day work period. Indeed, it is likely that Congress modelled the 7(k) exception after the 28–day scheduling periods used by many police and fire departments before the enactment of § 7(k). *See* H.R. Conf. Rep. No. 953, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2862, 2864 (overtime exemption relating to existing 28–day work schedules). The Winnetka Police Department's schedule is a case in point. Winnetka established its police department's 28–day work period before § 7(k) existed. That is enough. When a schedule meets all of the

factual criteria for § 7(k), the employer qualifies for the 7(k) exemption regardless of whether the employees approve. Congress specifically rejected a requirement that the exemption would apply only if employees agreed to it. *Id.*

■■■ Winnetka concedes that plaintiff civilian officers' schedule does not qualify for the 7(k) exemption. Winnetka argues that its decision not to pay the civilian plaintiffs for time spent in roll call does not violate the FLSA, however, because plaintiffs' regular eight-hour work period includes 30 minutes of meal time. Meal periods ordinarily are not "work" time under the FLSA. 29 C.F.R. § 785.19(a). This court has adopted the predominant benefits test for determining whether meal periods are work periods. *Alexander*, 994 F.2d at 337 (adopting the test articulated in *Lamon v. City of Shawnee, Kansas*, 972 F.2d 1145, 1157–58 (10th Cir. 1992), *cert. denied*, 507 U.S. 972, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993)).[1] Under this test, a meal period is not work time if " 'the employee's time is not spent predominantly for the benefit of the employer.' " *Alexander*, 994 F.2d at 337 (quoting *Lamon*, 972 F.2d at 1155). Plaintiffs do not allege that the civilian employees had *any* duties during their meal period. The record establishes that the only restriction on the civilian plaintiffs' meal period was that they had to remain in the police department building or in radio contact with the building in case of an emergency. Therefore, the meal periods are not compensable under the FLSA, and Winnetka may properly offset the meal break against the compensable roll call time worked by plaintiffs. *See Avery*, 24 F.3d at 1347. While resolution of this issue normally would require factual determinations, the issue is appropriate for summary judgment in this case given that the parties filed cross motions for summary judgment and generated a record of uncontroverted facts. *See Alexander*, 994 F.2d at 339.

---

1. We recognize that separate federal regulations address whether meal periods are work time for general § 7(a) employees, here the civilian employees, as opposed to § 7(k) law enforcement personnel such as sworn police officers. *Cf.* 19 C.F.R. § 785.19(a) (general employees) *with* 29

C.F.R. § 553.223(b) (police officers). This court has previously stated, however, that the predominant benefit test applies to both § 7(a) and § 7(k) employees. *Alexander*, 994 F.2d at 336–37; *see also, Avery*, 24 F.3d at 1344–1346.

Plaintiffs last argue that meal periods must be compensated periods for purposes of the FLSA because all plaintiffs are in fact paid for the meal periods. Plaintiffs argue that Winnetka's voluntary payment for meal periods transforms FLSA defined non-"work" time into FLSA defined "work" time—that is, paid time equals "work" time. We disagree. The FLSA sets a floor, not a ceiling, on compensation that employees must receive. Nothing in the statute, regulations, or the case law prevents an employer from compensating its employees for a full forty hour week even though they worked *less* than that amount. *See* 29 C.F.R. § 553.223(b) (noting that a public agency invoking a 7(k) partial overtime exception *"may* ... exclude meal time hours from hours worked"). The FLSA prohibits an employer from failing to compensate for "work" in excess of forty hours per week. The meal periods were not "work." Therefore, plaintiffs fail to establish an FLSA violation.

This understanding comports with the Manual's statement that "thirty (30) minutes or more beyond regular working hours in a day is considered overtime work...." Winnetka chose to pay the employees for 30 minutes of non-work time each day (the meal period). Winnetka reserved the right to offset 30 minutes of "work" time beyond regular working hours against this paid non-"work" time. Winnetka paid the employees overtime only when their work time actually exceeded eight hours in a day.

### III.

Winnetka has raised a host of other issues, including the statute of limitations, laches, waiver, and failure to exhaust administrative remedies. We decline to address these issues in the light of our finding that the Manual does not create an enforceable contractual right to compensation for time spent in roll call and our finding that Winnetka did not violate the FLSA. For the above reasons, the district court's entry of summary judgment in favor of Winnetka is AFFIRMED.