## In re BRAND NAME PRESCRIPTION DRUGS ANTITRUST LITIGATION.

**This Document Relates to All Cases.**

No. 94 C 897.
No. MDL 997.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 24, 1994.

Catherine A. Sazdanoff, Abbott Laboratories, Abbott Park, IL, Frank Cicero, Jr., James Andrew Langan, Jeffrey A. Leon, Anne J. McClain, Jeffrey S. Cashdan, Kirkland & Ellis, Chicago, IL, for Abbott Laboratories.

H. Blair White, John W. Treece, Bruce Michael Zessar, Sidley & Austin, Chicago, IL, for G.D. Searle & Co.

Kael Behan Kennedy, James L. Komie, Schuyler, Roche & Zwirner, Chicago, IL, Marguerite S. Boyd, John W. Nields, Jr.,

Howrey & Simon, Salvatore A. Romano, Patricia A. Gaegler, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Bindley Western Industries, Inc.

David E. Everson, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Michael Lee Brooks, Gregory D. Hanley, Brooks, Cahill & Hanley, Chicago, IL, Richard Alan Arnold, Scott E. Perwin, James J. Kenny, William J. Blechman, Kenny, Nachwalter, Seymour, Arnold, Critchlow & Spector, P.A., Miami, FL, Richard W. Giauque, Stephen T. Hard, Douglas H. Patton, Giauque, Crockett, Bendinger & Peterson, Salt Lake City, UT, for Marion Merrell Dow, Inc.

Ruth F. Masters, Latham & Watkins, Ralph Joseph Gabric, Willian, Brinks, Olds, Hofer, Gilson & Lione, Ltd., Lee A. Freeman, Jr., John F. Kinney, James T. Malysiak, Freeman, Freeman & Salzman, Richard William Austin, Richard S. Wisner, Audrey A. Berish, Pretzel & Stouffer, Chtd., Thomas D. Rosenwein, Nancy Schaefer, David Stewart Fleming, Heather A. Libbey, Schaefer, Rosenwein & Fleming, George L. Saunders, Jr., Saunders & Monroe, Chicago, IL, William F. Cavanaugh, Jr., Patterson, Belknap, Webb & Tyler, Thomas F. Curnin, Laura Mezey, Cahill, Gordon & Reindel, New York City, Donald L. Flexner, Crowell & Moring, Jennifer A. Albert, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, Richard J. Holwell, Ronald W. Davis, Robert A. Milne, White & Case, New York City, Arthur Makadon, Mark S. Stewart, Leslie E. John, Daniel Schoor–Rube, Stephen J. Kastenberg, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, Herbert Dym, David L. Meyer, Jonathan R. Galst, Covington & Burling, Washington, DC, Robert E. Davy, Robert E. Davy, Jr. & Associates, Chicago, IL, Frederick P. Furth, Furth, Fahrner & Mason, Joseph L. Alioto, Joseph L. Alioto Law Offices, San Francisco, CA, Barbara Reeves, Morrison & Foerster, Los Angeles, CA, John Alexander Cochrane, Cochrane & Bresnahan, Charles Harley Johnson, Johnson Law Office, Joseph Andrew Kowalcik, Kowalcik Law Office, St. Paul, MN, for Burroughs Wellcome Co.

Craig Allen Varga, Peterson & Ross, Chicago, IL, Alan J. Weinschel, Bruce A. Col-bath, Weil, Gotshal & Manges, New York City, Steven P. Mandell, Davidson, Goldstein, Mandell & Menkes, Chicago, IL, for Foxmeyer Drug Co.

William J. Gibbons, Latham & Watkins, Chicago, IL, J. Thomas Rosch, McCutchen, Doyle, Brown & Enersen, Trevor J. Chaplick, Latham & Watkins, San Francisco, CA, for McKesson Corp.

Kenneth M. Sullivan, Illinois Atty. General's Office, Chicago, IL, Jerome I. Chapman, Kenneth A. Letzler, Deena R. Bernstein, Jill T. Feeney, Arnold & Porter, Washington, DC, for Glaxo, Inc.

Nathan P. Eimer, Sidley & Austin, Chicago, IL, Mary B. Cranston, Jeffrey S. Ross, Terrence A. Callan, Pillsbury, Madison and Sutro, San Francisco, CA, for Rhone–Poulenc Rorer, Inc.

Thomas F. Gardner, Deborah Platt Herman, Jones, Day, Reavis & Pogue, Alan H. Silberman, Sanford Mark Pastroff, Evan G.S. Siegel, Sonnenschein, Nath & Rosenthal, Chicago, IL, David Klingsberg, Michael Malina, David Copeland, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Pfizer, Inc.

Daniel Richard Formeller, Andrea Ellen Kayne, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, Kenneth R. Logan, Richard C. Weisberg, Joseph F. Tringali, Kathryn A. Clokey, Peter G. Koclanes, Simpson, Thacher & Bartlett, New York City, for American Home Products Corp.

Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, Steven E. Bizar, Howard D. Scher, Stephen J. Levy, Montgomery, McCracken, Walker and Rhoads, Philadelphia, PA, for Alco Health Services Corp.

William M. Hannay, Linda K. Stevens, Schiff, Hardin & Waite, Chicago, IL, Robert K. Stanley, James H. Ham, III, Baker & Daniels, Indianapolis, IN, for Eli Lilly and Co.

Paul C. Saunders, Douglas D. Broadwater, Stephen S. Madsen, Cravath, Swaine & Moore, Kevin J. Arquit, Richard A. Cirillo, Rogers & Wells, New York City, Eric D.

Freed, Law Offices of Eric D. Freed, Los Angeles, CA, for Bristol–Myers Squibb Co.

Larry J. Saylor, James G. Vantine, Jr., B. Jay Yelton, III, Charles E. Ritter, Catherine M. Patterson, Miller, Canfield, Paddock & Stone, Detroit, MI, Martin J. Dubowsky, Martin J. Dubowsky, Ltd., Chicago, IL, for Upjohn Co.

William F. Cavanaugh, Jr., Thomas W. Pippert, Roosevelt N. Nesmith, Patterson, Belknap, Webb & Tyler, New York City, for Johnson & Johnson.

Michael M. Conway, Hopkins & Sutter, P.C., Scott M. Mendel, Michael Sennett, Matthew K. Phillips, Ellen S. Kornichuk, Michael J. Abernathy, Stephen H. Wenc, Carolyn Suzanne Palk, Bell, Boyd & Lloyd, Chicago, IL, John W. Nields, Jr., Marguerite S. Boyd, Howrey & Simon, Washington, DC, Jennifer A. Albert, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Purdue Frederick Co.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the Court on five Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

First, the Wholesaler Defendants[1] move for Summary Judgment on plaintiffs' claims against them in the Consolidated and Amended Complaint under § 1 of the Sherman Act, 15 U.S.C. § 1. According to the Wholesaler Defendants, the plaintiffs'

chargeback allegations find no support in either fact or law.

Next, the Manufacturer Defendants[2] move for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or in the alternative for Summary Judgment, dismissing the indirect purchaser claims asserted against them in the Consolidated and Amended Complaint. As grounds for their motion, the Manufacturer Defendants maintain that the putative class plaintiffs, as indirect purchasers, lack standing under *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

Finally, Defendant Burroughs Wellcome, Co. ("Burroughs Wellcome") moves for Summary Judgment in its favor on certain[3] individual plaintiffs' Sherman Act claims for treble damages under § 4 of the Clayton Act, 15 U.S.C. § 15. In support of its motion Burroughs Wellcome asserts that the plaintiffs in the various individual actions, with the exception of Plaintiff Albertson's Inc., have not purchased brand-name prescription drugs directly from Burroughs Wellcome. Accordingly, Burroughs Wellcome claims that under *Illinois Brick,* the plaintiffs who are indirect purchasers are barred from recovering treble damages under § 4 of the Clayton Act.[4]

Each motion will be addressed below. Before proceeding, however, we first examine the legal standard from which to judge a motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, answers to interrogatories, admis-

---

1. The Wholesaler Defendants are as follows: Alco Health Services Corporation; Bergen Brunswig Corp.; Bindley Western Corporation; Cardinal Distribution, Inc.; FoxMeyer Drug Company; McKesson Corporation; and Whitmire Distribution Corporation.

2. The Manufacturer Defendants named in the Consolidated and Amended Complaint are as follows: Abbott Laboratories; American Cyanamid Company; American Home Products Corporation; Knoll Pharmaceutical Company, Bristol–Myers Squibb Company; Burroughs Wellcome Company; Ciba–Geigy Corporation; The DuPont Merck Pharmaceutical Company; Eli Lilly and Company; Forest Laboratories, Inc.; G.D. Searle & Company; Glaxo, Inc.; Johnson & Johnson; Marion Merrell Dow, Inc.; Merck & Company, Inc.; Pfizer, Inc.; Rhone–Poulenc

Rorer, Inc.; Sandoz Pharmaceuticals Corporation; Schering–Plough Corporation; SmithKline Beecham Pharmaceuticals Company; The Upjohn Company; Warner–Lambert Company; and Zenca, Inc.

3. *See* Motion of Defendant Burroughs Wellcome Co. For Summary Judgment.

4. The following three defendants have filed separate motions for summary judgment incorporating by reference and adopting as their own the arguments asserted in Defendant Burroughs Wellcome's Motion for Summary Judgment: Defendant Merck & Co. ("Merck"); Defendant Rhone–Poulenc Rorer Pharmaceuticals ("RPR"), Inc.; and Defendant Schering–Plough Corporation ("Schering–Plough").

sions, affidavits and other material show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment carries the initial burden of showing that no such issue of material fact exists. The moving party may discharge this burden by " 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Pursuant to Rule 56(e), when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue as to any material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

In making our determination, we are to draw inferences from the record in the light most favorable to the non-moving party. We are not required, however, to draw every conceivable inference, but rather, only those that are reasonable. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis–Chalmers Corp.,* 799 F.2d 311, 313 (7th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987).

The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial". *Id.* at 322–23, 106 S.Ct. at 2552.

It is in consideration of these principles that we examine the various motions before us.

## DISCUSSION

### I. The Wholesaler Defendants' Motion for Summary Judgment

The Wholesaler Defendants move for summary judgment in their favor on the allegations asserted against them in plaintiffs' Consolidated and Amended Complaint. According to the Wholesaler Defendants, the plaintiffs' § 1 Sherman Act claims against them must fail as a matter of indisputable fact and law.

The Wholesaler Defendants contend that there is no triable issue on the question of whether they had conspired to "fix, raise, maintain and stabilize the prices of Prescription Brand Name Drugs sold to the plaintiffs and the [putative] class members at supracompetitive levels." Consolidated and Amended Class Action Complaint at ¶ 79. As the Wholesaler Defendants see it, the plaintiffs' conspiracy allegations, as they relate to the Wholesalers, are based *only* upon chargeback agreements entered into by each Wholesaler with the Manufacturer Defendants. The Wholesaler Defendants contend that as a matter of undisputable fact, the chargeback agreements[5] do not fix or restrict the prices at which the Wholesalers can sell the Manufacturers' products to plaintiffs. Thus, argue the Wholesalers, since these chargeback agreements are legal on their face and do not directly involve the plaintiffs, the plaintiffs' conspiracy allegations against the Wholesaler Defendants must fail. We do not agree with the Wholesaler Defendant's approach of fragmenting and compartmental-

---

5. Representative examples of these chargeback agreements, along with supporting Affidavits, have been submitted for our review. *See* Appendix A to the Wholesaler Defendants' Motion for Summary Judgment.

izing the factual components of the plaintiffs' conspiracy claim.

First of all, in their Consolidated and Amended Complaint, the plaintiffs allege that the Manufacturer Defendants and the Wholesaler Defendants entered into and are engaging in "a continuing nationwide contract, combination and/or conspiracy in the unreasonable restraint of trade and commerce ... in violation of Section 1 of the Sherman Act." Consolidated and Amended Class Action Complaint at ¶ 78. The plaintiffs further allege that the substantial terms of this conspiracy were "to fix, raise, maintain and stabilize the prices of Prescription Brand Name Drugs sold to the plaintiffs and the class members at supra-competitive levels." *Id.* at ¶ 79. With respect to the Wholesaler Defendants' involvement in this scheme, the plaintiffs' allege that the Manufacturers and Wholesalers have implemented and have contracted to implement a "chargeback" system which has the effect of: (1) "fixing, raising, maintaining and stabilizing at above competitive levels prices charged to class members for Prescription Brand Name Drugs," *Id.* at ¶ 80(b); and (2) "preclud[ing] the wholesalers from reselling the Prescription Brand Name Drugs to Drug Stores at the much lower prices made available to Institutional Pharmacies," *Id.* at ¶ 80(d).

Plaintiffs contest the Wholesaler Defendants' motion essentially arguing that the Wholesaler Defendants have missed the mark. According to the plaintiffs they are not claiming that the chargeback agreements submitted by the Wholesaler Defendants standing alone and on their face are illegal. Rather, the plaintiffs are claiming that these chargeback agreements are simply *one* component of a single unitary scheme between and among the Manufacturer Defendants and the Wholesalers to artificially raise, fix, maintain and stabilize the price at which brand name prescription drugs are sold to plaintiffs and the putative class members. Thus, according to the plaintiffs, the content of the Manufacturer–Wholesaler agreements is insufficient to support entry of summary judgment.

We agree with the plaintiffs that summary judgment may not be entered at this time. Although the Wholesaler Defendants have sufficiently demonstrated that the chargeback agreements do not specifically deal with the prices the plaintiffs pay, the defendants have failed to establish that there is no issue of material fact as to plaintiffs allegations that the Wholesalers participated in an antitrust violation. In an attempt to dispose of this action at an early stage, the Wholesaler Defendants have fragmented and compartmentalized the plaintiffs' conspiracy allegations and have asked us to look at their conduct apart from the Manufacturer Defendants' alleged conduct, and apart from the other allegations of the complaint. The United States Supreme Court, however, has expressly admonished against such an approach:

> In [conspiracy anti-trust cases] plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. " ... The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole. *United States v. Patten,* 226 U.S. 525, 544 [33 S.Ct. 141, 145–46, 57 L.Ed. 333] (1913) ...; and in a case like the one before us, the duty of the jury was to look at the whole picture and not merely at the individual figures in it."

*Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 698–99, 82 S.Ct. 1404, 1410, 8 L.Ed.2d 777 (1962) (quoting *American Tobacco Co. v. United States,* 147 F.2d 93, 106 (6th Cir.1944)).

Here, in their Amended and Consolidated Complaint, the plaintiffs are not alleging that the chargeback agreements, standing alone, constitute anti-trust violations. Rather, the plaintiffs specifically allege that the use of chargeback agreements between the Wholesaler Defendants and the Manufacturer Defendants was one form of concerted action which the defendants engaged in to fix prices. *See* Consolidated and Amended Complaint at ¶ 80(a)–(g). In light of the U.S. Supreme Court's cautionary warning in *Continental Ore,* we will not isolate the allegations against the Wholesaler Defendants and

rule on the propriety of their individual acts in the face of the larger scheme pled.

In their Reply Memorandum, the Wholesaler Defendants contend that summary judgment must be entered in their favor because the plaintiffs have not satisfied their burden of coming forward with evidence that " 'tends to exclude the possibility' that the alleged co-conspirators acted independently." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987) (quoting *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984), and other cases cited therein). On the contrary, it is the Wholesaler Defendants, as the moving party, that have not satisfied its initial burden of showing that it is entitled to summary judgment. As the U.S. Supreme Court recently observed, *Matsushita*'s requirement that plaintiffs' claims make "economic sense" did not change the burden carried by a plaintiff facing summary judgment in an antitrust case:

> The [*Matsushita*] Court did not hold that if the moving party enunciates *any* economic theory supporting its behavior, regardless of its accuracy in reflecting the actual market, it is entitled to summary judgment. *Matsushita* demands only that the nonmoving party's inferences be reasonable in order to reach the jury, a requirement that was not invented, but merely articulated, in that decision. (footnote omitted).

*Eastman Kodak Co. v. Image Technical Servs.*, —— U.S. ——, ——, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992). The Court in *Eastman Kodak* further observed that the moving party in an antitrust case bears "a substantial burden" in establishing that it is entitled to summary judgement. *Id.* Here, we find that the Wholesaler Defendants have failed to meet that burden. Although the chargeback agreements do not, as argued by the Wholesaler Defendants, specifically deal with the prices the plaintiffs pay, the plaintiffs have made a sufficient showing, at least at this point, that it is not unreasonable to conclude that these agreements are a part of an overall unitary chargeback scheme.

Essentially, whether the chargeback agreements are an element of an overall illegal scheme among the defendants is a disputed issue of material fact. Accordingly, mindful of the U.S. Supreme Court's admonition that summary judgment should be used sparingly in complex antitrust cases unless the record is clear that the antitrust claims cannot succeed, *Wigod v. Chicago Mercantile Exchange*, 981 F.2d 1510, 1514 (7th Cir.1992), we will not grant the Wholesaler Defendants' motion for summary judgement at this time.

## II. The Manufacturer Defendants' Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment

■ The Manufacturer Defendants move for judgment on the pleadings, or in the alternative, for summary judgment in their favor. After the close of pleadings, a Defendant may, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, move for judgment on the pleadings to dispose of the case on the basis of the underlying substantive merits. The appropriate standard for a judgment on the pleadings is that applicable to summary judgment, except that the court may consider only the contents of the pleadings. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir.1993). Thus, all well-pleaded allegations in the plaintiffs' pleadings are taken as true, and the facts and inferences to be drawn from those allegations are viewed in a light most favorable to the plaintiffs. *Id.* The granting of a Rule 12(c) motion will not be affirmed unless no genuine issues of material fact remain to be resolved and unless the [Defendant] is entitled to judgment as a matter of law. *Id.*

The Manufacturer Defendants assert that they are entitled to judgment as a matter of law because plaintiffs, as indirect purchasers, lack standing to bring their asserted claims against them. In support of their argument, the Manufacturer Defendants cite the United States Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

In *Illinois Brick*, plaintiff, the State of Illinois, brought suit against the manufacturers and distributors of concrete blocks, alleg-

ing a conspiracy to fix prices in violation of the antitrust laws. The concrete blocks were sold by the manufacturers to masonry contractors who used them in masonry structures. General contractors then used these structures in buildings which were ultimately sold to the state. *Illinois Brick*, 431 U.S. at 726–27, 97 S.Ct. at 2064–65. The plaintiff claimed that the intermediaries in the chain of distribution, the masonry contractors and general contractors, "passed on"[6] the increased fixed prices to the plaintiffs. The Supreme Court denied the plaintiffs recovery, holding that as an indirect purchaser in the chain of distribution, the plaintiff was precluded from seeking damages for illegal overcharges passed on to the plaintiff by intermediaries in the distribution chain who purchased directly from the manufacturers.[7] *Id.,* 431 U.S. at 746, 97 S.Ct. at 2074–75.

The Defendant Manufacturers analogize their situation to that of the block manufacturer defendants in *Illinois Brick* and assert that, as in *Illinois Brick*, the plaintiffs, as indirect purchasers, are precluded from bringing suit against them. The plaintiffs, however, insist that *Illinois Brick* does not bar their suit against the Manufacturer Defendants. The plaintiffs argue that their claim against the Manufacturer Defendants is not for overcharges "passed on" by the wholesalers, such as the type that would be barred by *Illinois Brick*. On the contrary, the plaintiffs allege overcharges *directly* imposed on the plaintiffs by both the manufacturers and the wholesalers as a part of a price-fixing conspiracy in which all of the

Defendants were participants. *See* Consolidated and Amended Class Action Complaint at ¶ 80.

The issue before the Court, therefore, is whether *Illinois Brick* precludes the plaintiffs from maintaining a suit against the Manufacturer Defendants based on allegations of a vertical, two-tiered conspiracy between the wholesalers and the manufacturers. The Seventh Circuit entertained the issue in *Fontana Aviation, Inc. v. Cessna Aircraft Co.,* 617 F.2d 478 (7th Cir.1980). In *Fontana,* an aircraft dealer, alleging a conspiracy between the aircraft manufacturer and the aircraft distributor, brought suit against the manufacturer charging antitrust violations. The Seventh Circuit held that *Illinois Brick* did not bar the plaintiff dealer's claim because the plaintiff did not seek damages for unlawful indirect overcharges passed on to it. *Id.* at 480. Rather, the plaintiff sued on the basis of a conspiracy consisting of a combination of acts designed to cause plaintiff competitive injury. *Id.* In its discussion of *Illinois Brick*'s applicability to the situation, the Seventh Circuit stated:

We are not satisfied that the *Illinois Brick* rule directly applies in circumstances where the manufacturer and the intermediary are both alleged to be co-conspirators in a common illegal enterprise resulting in intended injury to the buyer.

*Id.* at 481. Although the court's decision regarding the inapplicability of *Illinois Brick* ultimately rested on several factors (including the co-conspirator factor), the *Fontana*

6. "Pass-on" is a process by which an entity in a chain of distribution adjusts its price upward to compensate for an overcharge by a prior party in the chain. Comment, The Indirect Purchaser's Right to Sue Under Section 4 of the Clayton Act: Another Congressional Response to Illinois Brick, 32 Am.U.L.Rev. 1087, 1087 n. 2 (1983). Normally, this occurs when sellers pass on costs downward in the chain of distribution from the manufacturer to the ultimate purchaser. *Id.* However, the reverse can also occur. *Id.* Passing on costs spreads the effect of anticompetitive activity beyond the direct purchaser or seller to all buyers and sellers in the chain of distribution. *Id.* The result is that the ultimate buyer or seller often bears the cost of the overcharge. *See* Note, Scaling the Illinois Brick Wall: The Future of Indirect Purchasers in Antitrust Litigation, 63 Cornell L.Rev. 309, 311 (1978).

7. In so holding, the Court relied upon its earlier decision in *Hanover Shoe v. United Shoe Mach. Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). In *Hanover Shoe,* the Court held that an antitrust violator could not defend a suit by a direct purchaser on the basis that the purchaser had not been injured because it had passed on an illegal overcharge to its own customers. *Hanover Shoe,* 392 U.S. at 494, 88 S.Ct. at 2232. *Illinois Brick* involved the offensive use of this pass-on theory. The Court reasoned that symmetry required a bar of the offensive use of the pass-on rationale by indirect purchasers in the distribution chain. *Illinois Brick,* 431 U.S. at 736, 97 S.Ct. at 2069–70.

court seemed to indicate that the "co-conspiracy intermediary issue" was not within the realm of *Illinois Brick* and thus was no bar to the plaintiff's suit.

Four years later, the Ninth Circuit relied upon *Fontana* in deciding *Arizona v. Shamrock Foods Co.,* 729 F.2d 1208 (9th Cir.1984), *cert. denied,* 469 U.S. 1197, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985). In *Shamrock Foods,* the Ninth Circuit held that *Illinois Brick* did not bar plaintiff consumers from alleging that retail intermediates, i.e., grocery stores, were engaged in a conspiracy with dairy producers to fix the prices of dairy products at the retail level. *Id.* at 1211. The plaintiff asserted and the court agreed that because the damages were attributable to the fixed prices at the retail level, not at the wholesale level, there were no pass-on damages and *Illinois Brick* did not apply. *Id.*

Other courts have similarly concluded that, amidst allegations of sellers conspiring with intermediates in the distribution chain, *Illinois Brick* is no bar. *See e.g., In re Mid–Atlantic Toyota Antitrust Litigation,* 516 F.Supp. 1287 (D.Md.1981), *and aff'd,* 704 F.2d 125 (4th Cir.1983); *Reiter v. Sonotone Corp.,* 486 F.Supp. 115 (D.Minn.1980); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 494 F.Supp. 1246 (E.D.Pa.1980). Common among all of these cases is an examination of the policy objectives underlying *Illinois Brick* and an ultimate conclusion that, by permitting a plaintiff to maintain a suit against an otherwise indirect party who has been conspiring with an intermediate, those concerns would not be thwarted. When the reasons for applying a rule fail to apply, application of the rule becomes inappropriate.

■ In *Illinois Brick,* the Supreme Court articulated at least two major policy reasons for denying the plaintiff's recovery. First, the Court reasoned that if indirect purchasers were permitted to sue for overcharges passed on to them from indirect sellers, a substantial risk of duplicative recovery would be created. *See Illinois Brick,* 431 U.S. at 737, 97 S.Ct. at 2070. Under *Hanover Shoe,* a seller may not raise a passing-on defense in a suit brought by intermediates, thus the intermediates may recover from the sellers the whole of the proven overcharge. If the indirect purchasers were also permitted to recover damages for the passed-on overcharges, multiple recovery would occur. The seller would be fully liable to both the intermediates and the indirect purchasers. *Illinois Brick* seeks to avoid the unfairness of this result.

The risk of multiple liability is virtually eliminated, however, where the seller and intermediate are alleged to be co-conspirators. Under such circumstances, the seller and the intermediate are considered equal participants in the conspiracy, thus the intermediate may no longer recover in a suit against the seller. Because the seller and intermediate are equal, the "indirect" purchaser's injury likewise becomes "direct." This is so, because the harm suffered by the purchaser is directly caused by the co-conspirators, not passed indirectly through some distributional chain. Central to the concept is the assertion that the intermediates are engaging in knowing, illegal acts in concert with the manufacturers which gives rise to their status as co-wrongdoers. The situation in which an otherwise innocent party merely "passes on" the charges of its manufacturer inflated by the illegal price fixing conduct engaged in by those manufacturer sellers, is distinguishable factually and in terms of its legal effect from the plaintiffs' instant allegations.

The second policy notion with which *Illinois Brick* was concerned involved the complexities of tracing damages passed-on throughout the various stages of the chain of distribution. *Id.* The existence of the tracing issue derives from the difficulties encountered in attributing price increases, or any portion thereof, directly to the illegal overcharge as opposed to other forces which may affect the market (e.g., supply and demand). *Mid–Atlantic Toyota,* 516 F.Supp. at 1292–93. Thus, the concern in *Illinois Brick* focused upon the complexities of evaluating the injury which indirect purchasers sustain by illegal overcharges passed on through the distributional chain.

The tracing concern, like the risk of multiple liability, is greatly diminished amidst allegations of a conspiracy between the seller

and the intermediate. This is so, because with the existence of a conspiracy to fix prices, market forces are superseded. The prices paid by the indirect purchasers are almost by definition not determined by the influence of supply and demand. Without the interference of such market forces, the complexity of the damages calculation drops markedly.

Having articulated the policies underlying *Illinois Brick* and their general inapplicability to cases involving allegations of conspiracy, we turn now to the applicability of *Illinois Brick* to cases such as that presented here, where charges of vertical conspiracy have been alleged. The plaintiffs allege that the Manufacturer Defendants, together with the Wholesaler Defendants, entered into a price-fixing conspiracy whereby they "acted jointly and in concert to fix, raise, maintain and stabilize the prices which they charged retail pharmacies for Prescription Brand Name Drugs." Consolidated and Amended Class Action Complaint at ¶ 80(a). Taking, as we must, the plaintiffs' allegations as true, the question becomes whether *Illinois Brick* precludes the plaintiffs from bringing suit against the Manufacturer Defendants. We conclude that, for many of the reasons stated above, the policy concerns which guided the Court in *Illinois Brick* fail to pose significant problems in the allegations presented here. Unlike the plaintiffs in *Illinois Brick*, the plaintiffs here are not alleging that the illegal overcharges were passed on to them through the chain of distribution. Rather, the plaintiffs are alleging a massive conspiracy in which all of the defendants, wholesalers and manufacturers, were participants. We do not believe that *Illinois Brick* pertains to the factual circumstances as alleged by the plaintiffs. As such, we find that *Illinois Brick* does not apply.

The court recognizes that at least two circuits have expressly rejected the vertical conspiracy theory. *See Link v. Mercedes–Benz of North America, Inc.*, 788 F.2d 918, 931 (3d Cir.1986); *In re Midwest Milk Monopolization Litigation*, 730 F.2d 528, 531 (8th Cir.1984). In each of these cases, the plaintiffs' allegations of vertical conspiracy succumbed to *Illinois Brick* because the

plaintiffs had failed to join all of the intermediate co-conspirators, thereby increasing the risk of multiple liability. We refrain, however, from granting the Manufacturer Defendants' motion on these grounds. In the present case, the plaintiffs have named a large percentage of all possible Wholesaler Defendants. In light of that, we do not believe the plaintiffs should be so severely penalized for the failure to join every single Wholesaler Defendant. We conclude that *Illinois Brick* does not apply to the situation as alleged by the plaintiffs. As such, the Manufacturer Defendants' motion is denied.

### III. Burroughs Wellcome's Motion for Summary Judgment

█ Defendant Burroughs Wellcome, Co. ("Burroughs Wellcome") moves for Summary Judgment in its favor on certain individual plaintiffs' Sherman Act claims for treble damages under § 4 of the Clayton Act, 15 U.S.C. § 15. Similar to the Manufacturer Defendants, Burroughs Wellcome asserts that because the plaintiffs in the various individual actions, with the exception of Plaintiff Albertson's Inc., have not purchased brand-name prescription drugs directly from Burroughs Wellcome, *Illinois Brick* bars the plaintiffs' claims as to Burroughs Wellcome. For the reasons stated above in the Manufacturer Defendants' portion of this opinion, we disagree. We conclude that where its policy concerns would not be significantly advanced, *Illinois Brick* has no application to cases involving allegations of vertical conspiracy. The defendant's motion is therefore denied.

### CONCLUSION

For the reasons stated above, each of the Defendants' motions is denied.