In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 18-2609

ADRIEL OSORIO,

*Plaintiff-Appellant,*

*v.*

THE TILE SHOP, LLC,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 15 C 15 — **Matthew F. Kennelly**, *Judge.*

———————————

ARGUED DECEMBER 3, 2018 — DECIDED SEPTEMBER 23, 2019

———————————

Before SYKES, BARRETT, and ST. EVE, *Circuit Judges*.

SYKES, *Circuit Judge*. Anyone who has worked in a commissioned sales position knows that earnings are unpredictable. Commissions often fluctuate from one pay period to the next. The Tile Shop, LLC, a specialty retailer of ceramic and stone tile, uses a compensation system designed to smooth the earnings of its commissioned sales staff. The Tile Shop pays a semimonthly "draw" of $1,000 ($24,000 annually) even if a sales associate earns less than that amount in

commissions during the pay period. The Tile Shop reconciles and recovers any shortfall between actual earned commissions and the $1,000 draw in subsequent pay periods, but only from commissions in excess of $1,000.

For ten months Adriel Osorio sold tile and related products for The Tile Shop, first in Illinois and then in New Mexico. His earnings reflected the ebb and flow of sales. When business was slow and his commissions totaled less than $1,000 in a pay period, The Tile Shop paid him the guaranteed $1,000 and reconciled the difference in later pay periods when his commissions exceeded $1,000. He quit in July 2014.

Months later Osorio filed this class action alleging that The Tile Shop's "recoverable draw" system violates the Illinois Wage Payment and Collection Act ("IWPCA" or "the Act") and its implementing regulations. As relevant here, the regulatory scheme prohibits employers from deducting more than 15% from an employee's wages per paycheck as repayment for previous cash advances. Osorio's suit claimed that The Tile Shop's compensation system functions as a series of cash advances and his former employer deducted more than 15% of his wages at various points to recoup previous draw payments.

Ruling on cross-motions for summary judgment, the district judge held that The Tile Shop's compensation system does not involve "cash advances," so no violation of Illinois law occurred. We affirm, though on a different rationale. The Act prohibits "deductions by employers from wages or final compensation" unless specified conditions are met. 820 ILL. COMP. STAT. 115/9 (2018). The rules for repayment of cash advances are found in the regulations, but the threshold

question is whether The Tile Shop's draw reconciliations are "deductions" from wages or final compensation. They are not. The reconciliations determine the employee's gross wages before tax withholding and other deductions are made.

## I. Background

The Tile Shop, LLC, sells tile and related materials and accessories. It operates 128 retail stores across 31 states. Each store employs a manager, one or two assistant managers, and a staff of sales associates. Sales associates and assistant managers are primarily responsible for sales.

The Tile Shop pays its sales associates and assistant managers pursuant to a "Sales Associate Pay Plan." The company gives prospective employees a copy of the plan with its offer letter. Portions of the plan have been revised over the years, but the material terms have not changed. The plan explains how the company compensates its sales staff, primarily through commissions but also with bonuses on sales of certain products and periodic incentives. The Tile Shop pays employees on a semimonthly basis.

Commission income naturally varies from pay period to pay period depending on sales volume, the profitability of products sold, and the specific circumstances at the store in question. To provide a stable and reliable income, The Tile Shop guarantees its sales staff a minimum of $1,000 for each semimonthly pay period, for an annual salary of at least $24,000. If an employee earns less than $1,000 in commissions in a pay period, The Tile Shop reconciles and recovers the difference in subsequent pay periods, but only against commission earnings in excess of the guaranteed minimum.

The $1,000 "draw" counts toward gross wages for purposes of payroll and income taxes, and it is prorated if the employee does not work the full pay period. An employee's first three pay periods are essentially a grace period. The Tile Shop pays the guaranteed $1,000 and does not seek to recover any shortfall in actual commissions. Beginning with the fourth pay period, The Tile Shop reconciles any commission shortfalls below $1,000 against future commissions exceeding $1,000 in subsequent pay periods until recovered in full. Notably, this reconciliation formula determines gross wages for purposes of payroll and income taxes and any other applicable deductions. An employee who leaves the company receives a draw payment during his final pay period of employment even though he will not make additional sales. The Tile Shop does not require reimbursement of an outstanding draw balance at the end of employment.

The Tile Shop employed Osorio as a sales associate in an Illinois store from September 2013 until February 2014 and as an assistant manager in a New Mexico store from February to July 2014. His pay schedule reflects The Tile Shop's system of draws and reconciliations. For example, Osorio's total compensation for the second pay period in December and first pay period of January included draw payments. The Tile Shop recovered the difference after Osorio's strong performance to end January. In total, Osorio received $2,038.47 in recoverable draw compensation during his employment, and $1,141.46 was reconciled against subsequent commissions and incentive payments. When he left the company, he did not have to repay the balance.

In January 2015 Osorio filed this class-action lawsuit against The Tile Shop alleging violations of the federal Fair

Labor Standards Act, the IWPCA, and the Illinois Minimum Wage Law. The district judge granted The Tile Shop's motion for partial judgment on the pleadings with respect to Osorio's IWPCA claim. His original complaint alleged that the company did not have his written authorization to recoup the draw payments. The judge ruled that he had authorized the recoupment by signing the pay plan attached to his offer of employment.

Osorio sought reconsideration, but the judge declined to revisit his decision. Osorio later moved to amend his complaint to recharacterize the IWPCA claim as a challenge to impermissible recoupments of "cash advances." The judge granted the motion. Osorio then moved for class certification on the reformulated IWPCA claim, proposing the following definition of the class:

> All persons employed in a Tile Shop retail store in the State of Illinois, except store managers, who had a deduction made to a paycheck received at any time from January 2, 2005[,] up to and including the date of trial, in order to recoup a cash advance where the deduction was in excess of 15% of the gross pay received in that paycheck.

This definition correlated to Osorio's new legal theory, which rested on the Act's implementing regulations—more specifically, an administrative rule providing that "[n]o cash advance repayment agreement shall provide for a repayment schedule of more than 15% of an employee's gross wages or final compensation per paycheck." ILL. ADMIN. CODE tit. 56, § 300.800 (2018). The judge granted the class-certification motion.

The parties then filed cross-motions for summary judgment on the IWPCA claim. The judge granted The Tile Shop's motion and denied Osorio's. He determined that the claim "hinge[d] on the question … whether [The] Tile Shop's 'recoverable draw' system is a cash advance repayment agreement." He then examined the pay plan in detail and found one aspect particularly compelling: a departing employee receives a draw in his final paycheck even if he makes less than $1,000 in commissions, and he is not required to pay it back. "Because the undisputed facts establish that [The] Tile Shop does not always require repayment of draws," he concluded, "they do not constitute cash advances."

The parties settled the FLSA and Illinois Minimum Wage Law claims, and the judge entered final judgment on the IWPCA claim. Osorio appealed.

## II. Discussion

We review a summary judgment de novo, construing evidence and drawing inferences in favor of the nonmoving party. *Barefield v. Village of Winnetka*, 81 F.3d 704, 708 (7th Cir. 1996).

The IWPCA prohibits "deductions by employers from wages or final compensation" unless certain conditions are met. § 115/9. As we've explained, the Act's implementing regulations establish requirements for deductions from wages pursuant to a "cash advance repayment agreement," one of which is the 15%-per-paycheck limitation. ILL. ADMIN. CODE tit. 56, § 300.800. In the district court, The Tile Shop made two arguments in opposition to Osorio's reformulated IWPCA claim. The first was that the draw reconciliations are

not "deductions from wages or compensation" within the meaning of the Act. The second was that the draw system does not involve "cash advances" within the meaning of the regulations. The judge agreed with The Tile Shop's second argument, holding that the draws are not cash advances.

On appeal The Tile Shop reiterates both arguments. We find the first inquiry dispositive. The IWPCA is triggered only if the draw reconciliations constitute "deductions … from wages or final compensation." The Act broadly defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." 820 ILL. COMP. STAT. 115/2 (2018). But neither the statute nor the implementing regulations define the term "deductions," nor has any court defined the term as used in the Act.

The Tile Shop relies on *Cohan v. Medline Industries, Inc.*, 843 F.3d 660 (7th Cir. 2016), but that case does not inform the analysis here. In *Cohan* two employees claimed that their employer, Medline, violated the IWPCA by making illegal deductions from their commissions without written authorization. *Id.* at 661. The plaintiffs challenged two aspects of the company's pay structure. First, Medline calculated a salesperson's net growth in sales on a month-over-month basis, and if a salesperson had negative net growth for an account, that resulted in a negative commission. Second, the commission calculation included a "carryover" component such that a salesperson with a negative overall territory sales growth in one month was required to cover that loss with any positive sales growth in subsequent months. *Id.* at 663–64.

We rejected the plaintiffs' claim because Medline's compensation plan "clearly and unambiguously provided for

negative growth being taken into account when calculating *commissions*." *Id.* at 667 (emphasis added). That final word is key—the challenged aspects of the Medline plan dealt with calculating the underlying *commissions*. This case, in contrast, does not challenge how The Tile Shop calculates commissions.

We return, then, to the question whether the draw reconciliations are "deductions … from wages or final compensation." Although the Act does not define "deduction," if a statutory term has "a settled legal meaning, [Illinois] courts will normally infer that the legislature intended to incorporate the established meaning." *People v. Johnson*, 995 N.E.2d 986, 988 (Ill. 2013). In the payroll context, a deduction refers to "an amount of money that is taken by an employer from an employee's pay, for income tax, insurance, etc." *See Payroll Deduction*, CAMBRIDGE BUSINESS ENGLISH DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/ payroll-deduction (last visited September 18, 2019). Another dictionary similarly defines the term: "[The] amount withheld by an employer from [an] employee's earnings. It typically includes income tax, national insurance or social security contributions, and may also include group insurance or pension fund contributions … ." *See Payroll Deduction*, BusinessDictionary.com, http://www.business dictionary.com/definition/payroll-deduction.html            last visited September 18, 2019). In other words, as used in this particular context, the term "deduction" refers to withholdings from an employee's earnings, not the employer's method of *determining* an employee's earnings.

Related statutory provisions confirm this understanding. In Illinois, as elsewhere, a word appearing "more than once

in a statute is presumed to have been used by the legislature with the same meaning each time, absent an indication that a different meaning was intended." *Baker v. Salomon*, 334 N.E.2d 313, 316 (Ill. App. Ct. 1975); *see also* ANTONIN SCALIA & BRIAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170–73 (2012). In section 115/10 of the Act, Illinois requires employers to "furnish each employee with an itemized statement of *deductions* made from his wages for each pay period." 820 ILL. COMP. STAT. 115/10 (2019) (emphasis added). And the implementing regulations prohibit deductions for certain expenses, such as for training or educational courses, ILL. ADMIN. CODE tit. 56, § 300.780 (2019); damaged property, *id.* § 300.820; and uniforms required by the employer, *id.* § 300.840, "unless the employee's express written consent is given freely at the time the deduction is made." Under section 115/10 and the regulations, the term "deduction" is used as a term of art to refer to expressly stated categories of expenses withheld from an employee's pay.

Considered in context, the term "deductions" as used in the Act refers to withholdings from an employee's gross wages, not the formula used to calculate an employee's gross wages. This poses an insurmountable obstacle for Osorio. The draw-reconciliation system is part of The Tile Shop's formula for calculating a sales associate's semimonthly commission earnings. It is not a deduction from the sales associate's wages or final compensation. Osorio's paystub confirms this understanding: the draw payments and reconciliations appear as line items under "Earnings," not under "Deductions." To borrow an accounting phrase, the draw reconciliation is made "above the line" to calculate the

employee's gross wages before withholding for taxes and other applicable deductions are made.

Because the draw reconciliations are not "deductions … from wages or final compensation" within the meaning of section 115/9, The Tile Shop's compensation system does not violate the IWPCA.

AFFIRMED